167 N.J. Super. 513 (1979)
401 A.2d 279
DANIEL MALVASI, PLAINTIFF,
v.
JULIE MALVASI, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided January 4, 1979.
Mr. Peter L. Humen for plaintiff (Messrs. Guarini & Guarini, attorneys).
*514 Mr. Stephen J. Schaeffer for the defendant (Messrs. Miller, Hochman, Meyerson & Schaeffer, attorneys).
GROSSI, J.S.C.
Plaintiff (putative father) husband moves to compel defendant (mother) wife to submit to a human leucocyte antigen test to determine parentage. The use of this test as an aid in establishing paternity is of first impression in this jurisdiction. Heretofore, blood grouping tests have been utilized by the courts as an evidential aid where parentage is in issue.
It is known that medical science can identify the blood type of any given individual and exclude paternity through serological testing. It is established that genes (A and/or B as well as M and/or N) are present in human blood and are transmitted from parent to child in accordance with the Mendelian law. Miller v. Domanski, 26 N.J. Super. 316 (App. Div. 1953).
Neither gene "M" nor gene "N" can appear in the blood of a child unless it is present in at least one of its parents. On the base[d] on these discoveries it has been demonstrated that parents belonging to given blood groups can only have children with certain types of blood, and no other. [Id. at 320]
The results of this test, then, either exclude paternity or are inconclusive. The practical value of this test is a negative one; the results are admissible only in those cases where definite exclusion of paternity is indicated. Ross v. Marx, 24 N.J. Super. 25 (App. Div. 1953), and Miller v. Domanski, supra.
Human leucocyte antigen (HLA) typing, a method of tissue typing, detects antigens on white blood cells (leucocytes)[1]. An antigen is any substance which can stimulate antibody production when introduced into another individual. Antigens are produced under genetic control by genes. This phenomenon permits the affirmative use of blood test evidence *515 to show parentage. With blood grouping tests the probability of a nonexcluded male being the actual father is not usually high. But with HLA testing the probability of a nonexcluded male being the actual father is usually over 90%. This high degree of discrimination in either excluding or including, with a high probability, a given male is a result of the extreme diversity of HLA types in the population.[2]
Most people are "rare" types because only about one out of a thousand people will have a similar HLA type. Consequently, this relatively rare type can be looked for in the child of any given mating. If the child has the same rare type as the putative father, the man is likely to be the actual biological father. On the other hand, if the putative father is wrongly accused, he can usually be excluded because the child would have inherited a different rare type from the actual father.[3]
The courts are willing and desirous to utilize scientific techniques to aid them in the discovery of truth and the administration of justice. State v. Hibbs, 123 N.J. Super. 108 (App. Div. 1972), on remand 123 N.J. Super. 152 (App. Div. 1972); aff'd 123 N.J. Super. 124 (App. Div. 1973). However, before such new scientific techniques can be utilized, it is essential that they achieve general recognition in science as to their accuracy. State v. Cary, 99 N.J. Super. 323, remanded 53 N.J. 256 (1969), supplemented and aff'd 56 N.J. 16 (1970).
The acceptance of HLA testing in the scientific community as reliable and accurate is evinced in the joint AMA-ABA guidelines for serologic testing in paternity cases wherein the HLA test was recommended as the most powerful single paternity test for exclusion.[4]
*516 In view of the scientific community's recognition of the reliability and accuracy of HLA testing and its important probative value where paternity is in issue, the court will consider such medical evidence, together with other proofs, in deciding parentage. Defendant and plaintiff putative father, along with the child, shall submit to a tissue typing test.
Motion granted.
NOTES
[1] Terasaki, "Double Parenthood," Newsweek, Sept. 25, 1978, p. 67.
[2] Terasaki, "Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing," 16 J. Fam. L. 543 (1977-78). See also, Cramer [District Attorney] v. Morrison, 88 Cal. App.3d 873, 153 Cal. Rptr. 865 (Cal. D. Ct. App. 1979).
[3] Terasaki, at 544.
[4] Id. at 544.