**Virginia N. ZINN, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

**No. 1–181A10.**

Court of Appeals of Indiana, First District.

Aug. 24, 1981.

David K. Robinson, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana, James W. Turpen, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Virginia N. Zinn appeals from a conviction of telephone harassment pursuant to Ind.Code 35–45–2–2.[1] We reverse.

## FACTS

Delores Browning of 1375 East Chandler, Evansville, Indiana, testified that she and her family had received telephone calls in which the caller would either hang up immediately or leave the phone off the hook without speaking. These phone calls were repeated frequently throughout the day and night over several years. When the telephone company was able in February 1980 to install an electronic tracing device on her phone, Mrs. Browning requested them to do so. This device recorded two calls on February 29, 1980; one call on March 1, 1980; and five calls on March 2, 1980, all of which originated from the number 476–2075. That number lists V. N. Zinn, 1303 Lodge Avenue, Evansville, Indiana, a neighbor of

---

1. Ind.Code 35–45–2–2: "Harassment; 'obscene message' defined

Sec. 2. (a) A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication:
(1) makes a telephone call, whether or not a conversation ensues;
(2) communicates with a person anonymously or otherwise, by telegraph, mail, or other form of written communication; or
(3) transmits a false or obscene message, or indecent or profane words, on a Citizens Radio Service channel;
commits harassment, a Class B misdemeanor.

(b) A message is obscene if:
(1) the average person, applying contemporary community standards, finds that the dominant theme of the message, taken as a whole, appeals to the prurient interest in sex;
(2) the message refers to sexual conduct in a patently offensive way; and
(3) the message, taken as a whole, lacks serious artistic, literary, political, or scientific value.
*As added by Acts 1976, P.L. 148, Sec. 5. Amended by Acts 1977, P.L. 340, Sec. 72; Acts 1977, P.L. 343, Sec. 1; Acts 1978, P.L. 82, Sec. 4.*"

Mrs. Browning, as the subscriber. Evidence showed that there were three telephones installed at this location, one of which was located in an unlocked carport. Mr. Zinn testified that when he lived at 1303 Lodge Avenue he was charged for certain long distance calls which supposedly had originated from his number but which neither he nor his family had made. Mrs. Zinn's daughter, Teresa Zinn Hassel, testified that locks were not placed on the carport-storage area until March 6, 1980, and that prior to that time several items were missing or had been stolen from the area. Both Mr. Zinn and Mrs. Hassel testified that they had never known of Mrs. Zinn's making the type of harassing telephone call with which she was charged. Furthermore, Mrs. Browning testified that although she knew Mrs. Zinn to speak to her, they were not well-acquainted, and Mrs. Zinn had never been disrespectful or rude to her on any occasion.

## ISSUE

Is the evidence sufficient to support the conviction?

## DISCUSSION AND DECISION

Mrs. Zinn argues that the finding of guilty by the trial court is contrary to law because there is no evidence which identifies her as the person making the telephone calls complained of. The state, of course, contends that the evidence is sufficient to uphold the conviction.

■ A frequent problem in telephone harassment cases is identification of the caller. 74 Am.Jur.2d *Telecommunications* § 206 (1974). Therefore, it is well settled that identification of a telephone caller may be based upon circumstantial evidence. *Carbo v. United States*, (9th Cir. 1963) 314 F.2d 718, *cert. denied, Palermo v. U.S.*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498, *reh. denied* 377 U.S. 1010, 84 S.Ct. 1902, 1903, 12 L.Ed.2d 1058, and *cert. denied, Sica v. U. S.*, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498, *reh. denied* 377 U.S. 1010, 84 S.Ct. 1902, 1903, 12 L.Ed.2d 1058, and *cert. denied, Gibson v. U.S.*, 377 U.S. 953, 84 S.Ct. 1627,

12 L.Ed.2d 498; *United States v. Holder*, (D.Mont.1969) 302 F.Supp. 296; 7 Wigmore, Evidence § 2155 (Chadbourn rev. 1978); 74 Am.Jur.2d, *supra*.

■ The state is correct in pointing out that "where a conviction is based in whole or in part upon circumstantial evidence, we do not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence." *McGary v. State*, (1981) Ind.App., 421 N.E.2d 747, 751. We need find only that a reasonable inference may be drawn from such evidence to support the trial court's finding of guilt. *Parks v. State*, (1979) Ind., 389 N.E.2d 286. Thus, where there are two reasonable inferences, one of guilt and the other of innocence, which may be drawn from the same circumstantial evidence, it is not our duty to reverse simply because the circumstantial evidence does not seem to exclude every reasonable hypothesis of innocence. *Manlove v. State*, (1968) 250 Ind. 70, 232 N.E.2d 874, 235 N.E.2d 62. To be found sufficient to sustain a conviction, however, such reasonable inference of guilt "must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." *Ruetz v. State*, (1978) 268 Ind. 42, 373 N.E.2d 152, 157, *cert. denied* 439 U.S. 897, 99 S.Ct. 261, 58 L.Ed.2d 245. If no reasonable person could find the accused guilty beyond a reasonable doubt based on the body of circumstantial evidence presented, the conviction must be reversed for insufficient evidence. *Manlove v. State, supra.*

We find from the wholly circumstantial evidence in the case at bar that no reasonable person could have concluded beyond a reasonable doubt that Mrs. Zinn was the person guilty of the telephone harassment which the Browning family suffered. Although the evidence was uncontroverted that the telephone calls with which Mrs. Zinn was charged originated from a telephone number assigned to her address, there was no evidence that she *alone* had access to the number from which these calls originated. We contrast the case at bar, for instance, with *State v. Hibbs*, (1973) 123 N.J.Super. 124, 301 A.2d 775, in which the

court held that evidence from tracing equipment of a phone company when combined with other evidence that the accused was the only person who could have been on the premises from which the calls were made at the time they were made is sufficient to support a conviction for making obscene phone calls. The uncontroverted evidence here indicated that Mrs. Zinn was not the only person who had access to her telephone in the carport during the time in question.

We find it helpful also to compare this case with an Ohio case in which the court reversed a conviction for making harassing telephone calls on the ground that the defendant was not identified beyond a reasonable doubt as the person making the particular call in question. The facts in *State v. Hulsey*, (1968) 15 Ohio App.2d 153, 239 N.E.2d 567, showed that the complainant and the defendant were neighbors with longstanding differences revolving around incidents involving their children. At a certain point the defendant told the complainant " 'she would make me pay,' " 239 N.E.2d at 568, and immediately thereafter complainant began receiving silent telephone calls. Complainant occasionally heard background noises such as water running, defendant's daughter talking to her and calling her names, and teenage giggling. Complainant occasionally handed the receiver to her husband while she would go out into the street and see the defendant (doing what or where, she did not say). There was no direct evidence that the defendant personally had made any of the calls. The telephone company, by tracing equipment, recorded the origin of the numerous calls and connected them with defendant's telephone number. Regarding the particular call in question, however, which occurred at about 11:31 p. m. on January 25, 1966, and to which police responded by ringing defendant's doorbell at approximately 11:32 p. m., the court noted the following facts and circumstances:

> "[The defendant] was not observed using the telephone. One of the officers testified that there was a two-minute interval between their ringing of the doorbell and

defendant's appearance at the door, a sufficient time for defendant's husband to awaken, and emerge from his bedroom partially clad; and that she came from the area of the kitchen which is adjacent to the entrance to the basement, where she said she had been.

> "The husband said defendant did not to his knowledge use the telephone that evening. The daughter said defendant did use it once for a certain business call.

> "The daughter, on the other hand, exhibited a typical teenage addiction to the telephone. She had been making considerable use of the extension telephone in her bedroom that evening and admits calling some wrong numbers and remaining silent. She does not admit or deny calling the complainant, but says only that she did not do so intentionally. She states that she used her telephone later than 11:15, and after her father had supposedly quieted her for the night. This brings her use of the phone within the approximate time (11:31 p. m.) when the connection was locked. According to defendant's testimony that complainant had repeated certain scandal against the daughter, the latter had a motive for harassing the complainant, and had apparently called her in the past. Silent telephone harassment suggests a teenage mentality, or less. That does not necessarily eliminate the defendant, but is a fact to be considered."

*State v. Hulsey, supra*, at 239 N.E.2d 570. The court in *Hulsey* concluded that, although defendant clearly had the opportunity and motivation to make the call, the evidence failed to identify the defendant beyond a reasonable doubt as the person who made the call or calls.

■ We feel that the evidence in the case at bar which proved merely that the call or calls in question originated from a telephone number assigned to Mrs. Zinn without other evidence showing either that she had sole access to the use of that line or that she had some reason or motivation for making the telephone calls is insufficient to support her conviction beyond a reasonable

doubt. Such finding of guilt could only be based on suspicion, conjecture, or the fact that she had the opportunity to make the calls.

Judgment reversed.

NEAL, P. J., and ROBERTSON, J., concur.