**David A. GARRETT, Appellant,**

v.

**CITY OF BLOOMINGTON, Indiana; Bloomington Police Department Dispatcher Evelyn R. Gaston; Richard Hunter, Bloomington Police Officer # 162; Alan K. Pointer, Bloomington Police Officer # 164; and Paul E. Wells, Bloomington Police Officer # 202, Appellees.**

**No. 1–784A173.**

Court of Appeals of Indiana, First District.

May 21, 1985.

Rehearing Denied June 27, 1985.

---

Robert W. Beck, Sallee, Beck & Kenworthy, Bloomington, for appellant.

David L. Ferguson, Stephen L. Ferguson, Ferguson, Ferguson & Lloyd, Bloomington, for appellees.

NEAL, Judge. ·

## STATEMENT OF THE CASE

Two cases were consolidated for the purpose of this appeal: one, *Garrett v. City of Bloomington, et al.,* involves the grant of defendant's motion for summary judgment in an action for false arrest and imprisonment; the other, *City of Bloomington, et al. v. Garrett,* concerns the City's petition for the recovery of attorney fees expended in defending the false arrest claim.

We affirm the judgment in both cases.

## STATEMENT OF THE FACTS

On June 18th, 1981, a call was received on the 911 emergency telephone line by the Bloomington Police Department. The Dispatcher (defendant Gaston), answered the call and locked the line open, rendering it incapable of disconnection. The call consisted of maniacal laughter produced by a mechanical laughbox. When the dispatcher's repeated attempts to reprimand the caller were answered by the continued use of the laughbox, she requested Indiana Bell to locate the origin of the call.

Indiana Bell traced the open line to the apartment of David Garrett, the plaintiff-appellant in this case. Meanwhile, Garrett returned to the apartment at approximately 1:30 a.m., after he left work. His roommate was entertaining some friends and they had been drinking. Dispatcher Gaston communicated the information from Bell to three officers of the Bloomington Police Department (defendants Wells, Hunter, and Pointer). The officers positioned themselves outside the door of Garrett's apartment. Officer Wells radioed the dispatcher and instructed her to ring back the open line. At this time, the door to the apartment was opened by one of the occupants. The telephone was in the officers' view. David Garrett answered the phone. Garrett proceeded to verbally abuse Dispatcher Gaston. The officers proceeded through the open door, and arrested Garrett on a misdemeanor charge of making a harrassing telephone call on the 911 emergency line. He was searched and placed in a detention cell for several hours. The charge was later dismissed.

During the course of this lawsuit, defendant police officers moved for summary judgment, alleging the above facts as contained in various affidavits, depositions and answers to admissions. Garrett filed an affidavit in opposition stating that he did not make any calls to the 911 emergency line, and that he did not see or hear anyone in his apartment make a call to the 911 emergency line.

Initially, the trial court granted Garrett's summary judgment motion; then, after the officers filed a motion to reconsider, the trial court granted the officers' motion for summary judgment, stating that in order to sustain an action for false arrest, a plaintiff has the burden of proving that the defendants acted in bad faith or unreasonably believed their actions to be constitutional. The trial judge noted further that the officers raised this complete defense by stating in their affidavit that they in good faith believed they were acting constitutionally: "there is thus not (sic) genuine issue that defendants lacked either good

faith or a reasonable basis. With either good faith or a reasonable basis, the officers are entitled to judgment as a matter of law." (R. 154.)

After the trial court rendered his decision on the false arrest claim, the officers moved, pursuant to IND.CODE 34-4-16.5-19 of the Indiana Tort Claims Act, for payment of their attorney fees by Garrett on the grounds that the claim was frivolous, unreasonable, and in bad faith. The trial judge denied the motion.

## ISSUES

Garrett raises the following issues on appeal, which we have restated:

I. Did the trial court err when it found no genuine issue of fact existed for trial?

II. Did the trial court err in finding the plaintiff bore the burden of pleading and proving subjective bad faith on the part of the police officers when they made the misdemeanor arrest?

III. Did the trial court err in not awarding attorney fees?

We will discuss the first two issues together.

## DISCUSSION AND DECISION

Issues I, II: *Burden of proof.*

■ Our standard of review is the same as the trial court's—we must determine whether a genuine issue of material fact existed and whether the moving party is entitled to judgment as a matter of law. *Johnson v. Padilla,* (1982) Ind.App., 433 N.E.2d 393. "A fact is material if it is decisive of either the action or a relevant secondary issue". *Consolidated City of Indianapolis v. Cutshaw,* (1983) Ind.App., 443 N.E.2d 853, 856. A summary judgment proceeding cannot and should not be used as an abbreviated trial. *Cutshaw, supra.* The trial judge may not weigh the evidence in such a proceeding. In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the

motion must be taken as true. *Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735.

Garrett states that the law in Indiana is that:

"When officers act with a facially valid warrant or pursuant to a facially valid statute, even if the warrant is later found to be defective or the statute later declared to be unconstitutional, the police officer cannot be held liable for the false arrest so long as he believes in the constitutionality of the statute or warrant and acted in good faith thereon."

Appellant's brief, page 6.

His argument, however, is two-fold: first, he asserts that in the instant case, there was no valid process, it was a misdemeanor arrest, and the alleged act occurred outside the presence of a police officer; second, he argues that the trial judge erred in finding that he had the burden of proving bad faith on the part of the police officers.

■ Ordinarily, neither a police officer nor a private person may make an arrest without a warrant for a misdemeanor unless it was committed in his presence. 32 Am.Jur.2d *False Imprisonment,* Section 98. *See Works v. State,* (1977) 266 Ind. 250, 362 N.E.2d 144. A police officer may arrest without a warrant when he has probable cause to believe the person arrested is committing or attempting to commit a misdemeanor in his presence. IND.CODE 35-33-1-1. "It is also clear that the existence of probable cause to arrest is determined upon the basis of collective information known to the law enforcement organization, and the observance of the misdemeanor may be part of that collective information." *Brown v. State,* (1982) Ind., 442 N.E.2d 1109.

■ Here, as appellee point out, the offense of telephone harassment was committed in the presence of the dispatcher, who locked the phone line open and then had the line traced to Garrett's apartment. The dispatcher then relayed this information to other officers, who were able to corroborate the information upon their arrival at Garrett's apartment by observing Garrett

answer the phone and verbally abuse the dispatcher. The offense occurred in the presence of the dispatcher and became part of the collective information known to the Bloomington Police Department. The arrest was valid.

Garrett's second contention, however, gives us greater pause. He states that the trial judge erred in finding that he had the burden of proving bad faith on the part of the police officers.

Recent Indiana decisions hold that proof of the absence of probable cause is essential to the plaintiff's cause of action for false arrest. *Gomez v. Adams,* (1984) Ind.App., 462 N.E.2d 212 (trans. denied); *City of South Bend v. Fleming,* (1979) Ind.App., 397 N.E.2d 1075 (trans. denied). Likewise, a showing of lack of probable cause is necessary for a successful suit for malicious prosecution. *Gomez, supra.* Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. *Gomez, supra.* Thus, if the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail and the inquiry comes to a halt.

There is, however, a line of cases and authority which holds that the existence of probable cause in a false arrest case is an affirmative defense which must be pleaded and proven by the defendant. *See, e.g., Pierson v. Ray,* (1967) 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288; *Banish v. Locks,* (7th Cir.1969) 414 F.2d 638. We find that no sound reason exists to distinguish the burden of proof in a false arrest action from a malicious prosecution action.

Another difficult hurdle for the plaintiff was created in certain federal cases which had as their basis actions brought pursuant to 42 U.S.C., Sec. 1983, a provision of the federal Civil Rights Act. In *Banish,* along with the Sec. 1983 claim, the plaintiff also charged the defendants, the sheriff of St. Joseph County, Indiana, and certain deputy sheriffs and other county officials, with false arrest, false imprisonment, and malicious prosecution. *Banish, supra,* at 639. The *Banish* court cited with approval from *Pierson v. Ray,* wherein the U.S. Supreme Court held that the defense of good faith and probable cause, which is available to police officers in a common-law action for false arrest and imprisonment, is also available to them in an action under Sec. 1983. *Id.* at 641. Further, in regard to an action for malicious prosecution, as opposed to false arrest and imprisonment actions, the *Banish* court stated that "probable cause is an essential element of plaintiff's case". *Id.* at 640.

In *Brubaker v. King,* (7th Cir.1974) 505 F.2d 534, another Sec. 1983 case, the court enlarged upon the good faith defense. Again, citing *Pierson,* the *Brubaker* court stated that the U.S. Supreme Court explained how the two elements of good faith and probable cause were to be applied as a standard: "if the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact unconstitutional." *Pierson, supra,* 386 U.S. at 557, 87 S.Ct. at 1219, cited in *Brubaker, supra,* at 536. The Seventh Circuit went on to conclude:

> "The test, thus, under Sec. 1983 is not whether the arrest was constitutional or unconstitutional or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and whether that belief was reasonable."

*Id.*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* (2nd Cir.1972) 456 F.2d 1339, the court set forth compelling policy reasons for the good faith standard:

> "Having ruled against immunity, we must not be unmindful of the fact that these FBI and Narcotics Agents, whose lives are in constant danger (see concurring opinion in *United States v. Steward,*

451 F.2d 1203, 1208 (2d Cir.1971)) perform functions indispensable to the preservation of our American way of life. They must not be left defenseless against the demands of every person who manages to escape from the toils of the criminal law. We must, however, balance this consideration against the right of citizens to be free from unlawful arrests and searches, and arrests and searches carried out in an unreasonable manner.

\* \* \* \* \* \*

The numerous dissents, concurrences and reversals, especially in the last decade, indicate that even learned and experienced jurists have had difficulty in defining the rules that govern a determination of probable cause, with or without a warrant. [Citations omitted.] As he tries to find his way in this thicket, the police officer must not be held to act at his peril."

*Bivens, supra,* at 1347–48.

Judge Lumbard's concurrence in *Bivens* states:

"This second and lesser standard is appropriate because, in many cases, federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves. It would be contrary to the public interest if federal officers were held to probable cause standard as in many cases they would fail to act for fear of guessing wrong."

*Id.* at 1349.

Although the decisions quoted extensively indicate, without addressing the burden of proof issue, that the good faith of the officer is a defense, the Seventh Circuit, in the later case of *Whitley v. Seibel,* (7th Cir.1980) 613 F.2d 682, after quoting the above language, said:

"We must next consider whether the defendant's conduct is actionable under the applicable Section 1983 standard. The plaintiff argues that the defendant failed to prove a good faith reasonable belief of probable cause to arrest him on the felo-

ny charges. *The burden of proof, however, is on the plaintiff to prove the officer's lack of good faith or reasonable cause to believe he was acting constitutionally."*

*Whitley, supra,* at 685 (Our emphasis).

The language of *Whitley* has been reiterated in recent federal decisions, including *Guenther v. Holmgreen,* (7th Cir.1984) 738 F.2d 879, wherein the circuit court stated that a Sec. 1983 plaintiff assumes the burden of showing that the arrest was illegal —i.e., without probable cause—and that the arresting officer had no reasonable good faith belief in its legality. *Holmgreen, supra,* at 888. *See Llaguno v. Mingey,* (7th Cir.1984) 739 F.2d 1186; *Crowder v. Lash,* (7th Cir.1982) 687 F.2d 996.

Indiana law paralleling this line of federal cases commenced with *Mitchell v. Drake,* (1977) Ind.App., 360 N.E.2d 195, which relied heavily upon *Brubaker* and *Bivens.* The most recent recital of the law concerning false arrest is contained, as we stated, in *Gomez v. Adams, supra.*

 A summary of the above authorities reflects that in false arrest cases, the plaintiff has the burden of proof of the absence of probable cause. Probable cause to arrest is determined upon the basis of collective information known to the law enforcement organization. *Brown, supra.* A policeman is not liable for false arrest simply because the innocence of the suspect is later proved. *Pierson, supra.* Instead, a standard less stringent than probable cause exists—the good faith of the police officer. The test of this standard is not whether the arrest was constitutional or unconstitutional, or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable. The burden of proof, then, is on the plaintiff to prove the officer's lack of good faith or the lack of reasonable cause to believe he was acting constitutionally. *See Whitley, supra.* This rule is founded upon sound public policy; that is, allaying the intimidating

effect of civil suits initiated against police officers. In many cases, officers may fail to act out of the fear of reprisal in the form of lawsuits.

The principal controversy in this case is the question of who bears the burden of proof. As demonstrated, several Indiana decisions fix the burden of proving the absence of probable cause on the plaintiff in a false arrest case. We believe this position is correct, for not every arrest is actionable, but becomes actionable when made without probable cause. Hence the "false" element of the false arrest cause of action evolves. It necessarily follows that the plaintiff must prove something more than the mere fact that he was arrested; in accordance with the tenets of tort law, he must prove the impropriety of his arrest.

 The good faith rule, as shown above, creates a less stringent standard of conduct demanded of the police officer than that of constitutional probable cause. Like constitutional probable cause, though, the arrest is not actionable unless made in bad faith or with an unreasonable belief in the constitutionality of one's actions. We agree with the reasoning of *Whitley* and the recent Indiana cases which place this burden on the plaintiff.

III. *Attorney Fees.*

 IND.CODE 34–4–16.5–19 states in part:

"In any action brought against a governmental entity in tort, the court may allow attorney's fees as part of the costs to the governmental entity prevailing as defendant, if it finds that plaintiff:

(1) brought the action on a claim which is frivolous, unreasonable, or groundless;

(2) continued to litigate the action after plaintiff's claim clearly became frivolous, unreasonable, or groundless; or

(3) litigated its action in bad faith.

No Indiana decisions have interpreted the above statute; however, a federal district court, in *Moon v. Smith*, (E.D.Va.1981) 523 F.Supp. 1332, concluded that when Bivens actions against federal officials are commenced and prosecuted in bad faith, the defendants may recover their reasonable counsel fees expended. "Where the defense is provided the defendants at the expense of the United States, the United States may recover such counsel fees". *Moon, supra*, at 1332.

"Having studied the briefs and law therein cited, the Court can perceive no reason why government officials should be harassed by bad faith litigation at no risk to the plaintiff. The meritless nature of such a suit makes manifest that plaintiff's purpose was not to obtain a judgment but was merely to vex and harass or to obtain publicity. If a plaintiff can accomplish this at no risk to himself then there is no restraint upon a person of bad faith who may drain the energy, attention, and will of government officials at little or no cost to himself but at great expense and loss to the body politic."

*Id.*

We do not believe that the strong language cited above applies to the case at hand. IND.CODE 34–4–16.5–19 permits the trial judge, within his discretion, to award attorney fees if he finds the plaintiff's claim to be groundless. As Garrett points out, Judge Kellams initially granted plaintiff's summary judgment motion and then reversed such decision at a later time. Obviously the trial court found Garrett's position to have some merit, at least temporarily. We will not disturb the trial judge's decision not to award attorney fees pursuant to a provision of the Indiana Tort Claims Act.

For the foregoing reasons, the judgments in both causes of action are affirmed.

Judgments affirmed.

RATLIFF, P.J., dissents with opinion.

ROBERTSON, J., concurs.

## DISSENTING OPINION

RATLIFF, Presiding Judge, dissenting.

My disagreement with the majority opinion is two-fold. First, the case was decided on motion for summary judgment upon an issue not susceptible of summary disposition. Second, the arrest which forms the basis for this action was a warrantless arrest for a misdemeanor not committed within the presence of the arresting officer.

Courts must exercise caution in considering summary judgments to ensure the parties of their right to a fair determination of genuine issues. *Connell v. American Underwriters, Inc.* (1983), Ind.App., 453 N.E.2d 1028; *Vanco v. Sportsmax, Inc.* (1983), Ind.App., 448 N.E.2d 1198. Summary judgment is not appropriate to resolve questions of credibility or weight of evidence or conflicting inferences which may be drawn from undisputed facts. *Bell v. Northside Finance Corp.* (1983), Ind., 452 N.E.2d 951. Neither can the summary judgment procedure be used as a miniature trial to resolve factual disputes. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154. Summary judgment generally is not appropriate where the reasonable man standard must be applied. *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688. Even were the court to surmise that the non-moving party would be unlikely to prevail at trial, granting of summary judgment would not be proper. *English Coal Co. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, *trans. denied.*

Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant *a man of reasonable caution and prudence* in believing that the accused had committed or was committing a crime. *Gomez v. Adams,* Ind.App., 462 N.E.2d 212, *trans. denied.* Thus, the questions of the existence or absence of probable cause and the reasonable belief (good faith) of the arresting officer are factual determinations for the trier to make from a consideration of all the evidence. *Gomez.* Such determination is not one to be made upon motion for summary judgment. Further, the reasonable belief of the officer depends upon an application of the reasonable and prudent person test, a matter not appropriate for determination on summary judgment. *Doe.* The majority notes the trial judge apparently relied upon affidavits by the arresting officers asserting they in good faith believed they were acting constitutionally.[1] Such an important question cannot be resolved upon the self-serving statements of the officers involved. Indeed, such affidavits perhaps should not have been considered since they may not have presented any admissible evidence but only self-serving declarations and conclusions of the affiants. *See* Indiana Rules of Procedure, Trial Rule 56(E); *Interstate Auction, Inc. v. Central National Insurance Group, Inc.* (1983), Ind.App., 448 N.E.2d 1094. Therefore, in my view, it was improper for the court to determine these vital issues on summary judgment. Nothing short of a full trial will suffice.

Next, the warrantless arrest for a misdemeanor presents a serious problem. It is crystal clear that an officer may arrest for a misdemeanor without a warrant only if the misdemeanor is committed in the officer's presence. Indiana Code section 35-33-1-1; *Works v. State* (1977), 266 Ind. 250, 362 N.E.2d 144; *Robinson v. State* (1925), 197 Ind. 144, 149 N.E. 891; *Hart v. State* (1924), 195 Ind. 384, 145 N.E. 492.

Here, the misdemeanor for which Garrett was arrested was not committed in the view of the arresting officer. The arrest was upon a charge of telephone harassment, Indiana Code section 35-45-2-2, based upon the laughing box incident. Record at 130. The state, in a somewhat circuitous argument, says the officers were present when Garrett was on the telephone

---

**1.** Although the trial court referred to such affidavits, I do not find them in the record on appeal. Consequently, the exact content of such affidavits is unknown. Nevertheless, it seems clear that the self-serving statements of the officers alone cannot form the basis for establishing their good faith.

and made abusive remarks to the dispatcher. However, that was not the basis of the arrest. Neither was that call initiated by Garrett. The majority opinion relies upon *Brown v. State* (1982), Ind., 442 N.E.2d 1109, to support its conclusion that the offense was committed in the presence of the officers. In *Brown,* our supreme court stated that a police officer may arrest for a misdemeanor committed within his view and that the observance of the misdemeanor may be part of the collective information known to the law enforcement organization. *Brown,* 442 N.E.2d at 1115. But the facts in *Brown* are significantly different from those in this case. In *Brown,* a police officer actually did observe the commission of the misdemeanor and relayed the information to another officer who made the arrest. No such facts exist here. All the dispatcher's knowledge was that she received a telephone call in which someone placed a laughing box recording on the transmitter and that a trace by the telephone company revealed the call came from Garrett's phone. She did not observe any one place the call and did not know who was present at the location of the phone.[2] This is a far cry from *Brown* where one officer actually observed the commission of the offense and advised another officer who made the arrest.[3]

It has been said by some authorities that a warrantless arrest for a misdemeanor not committed within the view of the arresting officer cannot be justified on the basis of the alleged good faith of the officer or that the officer had reasonable cause for believing the offense had been committed. 32 Am.Jur.2d, *False Imprisonment,* § 98 (1982). According to one view, a warrantless arrest for a misdemeanor is made at the peril of the person making the arrest, and good faith is no excuse if an innocent person is arrested without a warrant on a misdemeanor charge. *Gill v. Montgomery Ward & Co.* (1954), 284 A.D. 36, 129 N.Y. S.2d 288, 49 A.L.R.2d 1452. Other courts have taken a more moderate position. The rule has been stated as follows:

> "In a suit for damages for false arrest for a misdemeanor, the plaintiff must prove that the arrest was made without lawful authority. Good faith on the part of the arresting officer is no defense, but he cannot be found liable so long as he has probable cause to believe a misdemeanor is being committed in his presence when he makes the arrest."

*Meyers v. Edwards* (1971), La.App., 256 So.2d 337, 339.

Legal justification is established, under Maryland law, if in making an arrest for a misdemeanor, a police officer has reasonable grounds to believe that conduct he has observed amounts to a misdemeanor. Thus, legal justification may be found only where the person making the arrest has legal authority to do so. *Shaw v. May Department Stores Co.* (1970), D.C.App., 268 A.2d 607. *See also State v. Whitney* (1978), 176 Ind.App. 615, 377 N.E.2d 652, *trans. denied* (where police officer was not in uniform, not wearing badge, and not driving police car as statute then required for making a traffic arrest, arrest was unlawful and could be construed to constitute a false arrest).

In *Meyers,* the officer observed persons drinking beer in the plaintiff's place of business on Sunday—a violation of the Sunday closing law. The officer in *Shaw* saw the plaintiff leaving the store with packages for which she had not paid. Thus, in both *Meyers* and *Shaw,* the arresting officers observed activity which created a reasonable belief that a misdemeanor had been committed in the officer's view.

---

2. Evidence merely proving that a call originated from a telephone assigned to defendant without other evidence showing defendant had sole access to the use of that line or some reason or motivation for making the call is insufficient to support conviction for telephone harassment. *Zinn v. State* (1981), Ind.App., 424 N.E.2d 1058.

3. Here, Garrett filed an affidavit in which he specifically denied being present when the alleged harassing call was made and denied making the call. This is disputed by the deposition of one of Garrett's friends, thus raising a factual issue which could not have been resolved on summary judgment.

Adopting the view expressed in *Shaw* and *Meyers*, in order to avoid liability for false arrest, the officers had to have observed conduct which reasonably led them to believe a misdemeanor was being committed within their view. At the very least, this involves a factual determination to be made from a consideration of all the evidence and requires application of a reasonable person standard, neither of which determinations are appropriate for summary judgment.

For all of the foregoing reasons, I respectfully dissent.